IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| PATRICK SHEAHAN, | ) | |
| Plaintiff, | ) | Case No: 13-cv-9134 |
| | ) | |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| THOMAS J. DART, in his official | ) | |
| capacity as Cook County Sheriff, and | ) | |
| COUNTY OF COOK, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Defendants' motion for summary judgment [39] is granted. Civil case terminated.

## STATEMENT

Patrick Sheahan ("Plaintiff") filed an amended complaint against Cook County and Thomas J. Dart in his official capacity as Cook County Sheriff (collectively, "Defendants") on April 2, 2014, claiming violations of Plaintiff's rights under the Americans with Disabilities Act. (First Am. Compl., Dkt. # 19.) This matter is before the Court on Defendants' Motion for Summary Judgment, filed January 5, 2015. (Mot. Summ. J., Dkt. # 39.)

For the reasons set forth below, Defendants' Motion for Summary Judgment is hereby granted.

### Factual Background

The following facts are undisputed.

Plaintiff has worked for the Cook County Sheriff's Office for the past 14 years as a Deputy Sheriff II, and is still employed in that position. (Pl.'s LR 56 Stmt., Dkt. # 50 at ¶ 1; Defs.' LR 56 Stmt., Dkt. # 41 at ¶ 4.) The job responsibilities for a Deputy Sheriff II include picking up detainees from jail cells and escorting them to court for hearings and trials. (Defs.' LR 56 Stmt., Dkt. # 41 at ¶ 6.) Since 2001, Plaintiff has suffered from a degenerative eye condition that has prevented him from working on the street. (*Id*. at ¶ 7.) Defendants have accommodated this disability by assigning Plaintiff exclusively to the Markham Courthouse lockup, a holding area for offenders that are brought to the courthouse for bond court hearings. (*Id*. at ¶¶ 5, 7.)

From January 26, 2013 to July 8, 2013, Plaintiff was off duty due to a herniated disk injury he suffered when an intoxicated prisoner he was escorting into lockup attacked him. (Pl.'s LR 56 Stmt., Dkt. # 50 at ¶ 3.) Plaintiff applied for and received temporary total disability benefits for a portion of this period off duty. (*Id*. at ¶ 4.) At the direction of Defendants, Plaintiff attended an independent medical examination at Rush Medical Center on May 24, 2013. (Defs.' LR 56 Stmt., Dkt. # 41 at ¶ 11.) At this examination, a spine specialist examined Plaintiff and found him fit to return to work at full duty, noting that "[Plaintiff's] ongoing pain complaints appear far out of proportion to his present clinical examination and the radiographic findings." (*Id*. at ¶¶ 11-12; Defs.' LR 56 Stmt., Dkt. # 41-6, Ex. B at 2.) On May 30, 2013, Plaintiff received a call from Defendants' Personnel Department informing him that his worker's compensation benefits were being terminated effective May 28, 2013 based on the results of the independent medical examination. (Pl.'s LR 56 Stmt., Dkt. # 50 at ¶ 5.) Plaintiff informed the Personnel Department that his own doctor did not feel Plaintiff was ready to return to work, but

agreed to report to the Cook County Medical Unit after seeing his physician. (*Id*.; Defs.' LR 56 Stmt., Dkt. # 41 at ¶ 14.)

On July 5, 2013, Plaintiff received a letter from the Personnel Department ordering him to return to work by July 8, 2013 with a diagnostic medical statement from his physician, and informing him that if he failed to report he could be terminated. (Pl.'s LR 56 Stmt., Dkt. # 50 at ¶ 6; Defs.' LR 56 Stmt., Dkt. # 41 at ¶ 16.) On July 8, 2013, Plaintiff reported to the Cook County Medical Unit and provided a "Disability Status/Certificate of Professional" form from his treating doctor recommending that Plaintiff be "placed on temporary disability" from July 8, 2013 until August 5, 2013, when Plaintiff would receive an "ESI [epidural steroid injection]." (Pl.'s LR 56 Stmt., Dkt. # 50 at ¶ 8; Defs.' LR 56 Stmt., Dkt. # 41-4, at Ex. 12.) The Cook County doctor noted that Plaintiff had been "seen by his physician and is to remain off work as per his physician until after ESI," and recommended placing Plaintiff on disability from July 8, 2013 until August 5, 2013. (Defs.' LR 56 Stmt., Dkt. # 41-4, Ex. 11.)

Upon returning to work, Plaintiff met with Shawn Lynch of the Personnel Department and requested a return to "light duty" based on the recommendations of his doctor and the county doctor. (Pl.'s LR 56 Stmt., Dkt. # 50 at ¶ 9.) Lynch declined this request and informed Plaintiff that he would have to return to full duty based on the independent medical examination findings. (Defs.' LR 56 Stmt., Dkt. # 41 at ¶ 23.) Plaintiff then returned to work without any accommodations and performed his normal duties at the Markham lockup from July 13, 2013 to February 22, 2014. (*Id*. at ¶ 24.) He was not issued his credentials immediately upon returning to work, prompting a supervisor to write a memorandum expressing concern over the safety of having Plaintiff work in the lockup without credentials. (Pl.'s LR 56 Stmt., Dkt. # 50 at ¶ 7.) Plaintiff was elbowed in the face by an inmate on February 22, 2014 and was off work with pay

until April 1, 2014. (Defs.' LR 56 Stmt., Dkt. # 41 at ¶ 25.) He returned to work on April 1, 2014 after his physician certified that he was fit to return to full duty. (*Id*. at ¶ 26.)

Plaintiff testified at his deposition that he was able to perform his normal duties upon his return in July 2013, but did so "guardedly" because of his concerns that he would be attacked again and reinjured. (Pl.'s LR 56 Stmt., Dkt. # 50 at ¶ 14.) Aside from the abovementioned request to Shawn Lynch that he be placed on disability leave, the only accommodation Plaintiff requested was a safer work environment. (*Id*. at ¶ 15; Defs.' LR 56 Stmt., Dkt. # 41 at ¶¶ 28-29.) Specifically, Plaintiff expressed concerns that the lockup was understaffed and that the deputies working there were denied Tasers and restraint chairs to help them control the detainees. (Pl.'s LR 56 Stmt., Dkt. # 50 at ¶ 15; Defs.' LR 56 Stmt., Dkt. # 41 at ¶ 30.) These concerns were common to all officers who worked at the lockup, and many other officers who did not share Plaintiff's disabilities requested better equipment and additional staffing. (Defs.' LR 56 Stmt., Dkt. # 41 at ¶ 31.)

Plaintiff believes that Defendants retaliated against him for his disability-related complaints in several ways. Plaintiff received reprimands for unauthorized absences, though such reprimands did not involve suspension or loss of pay. (Pl.'s LR 56 Stmt., Dkt. # 50 at ¶ 13; Defs.' LR 56 Stmt., Dkt. # 41 at ¶ 40.) After his return, Lieutenant John Hopkins told other employees that Plaintiff was unfit to continue working at his position. (Pl.'s LR 56 Stmt., Dkt. # 50 at ¶ 17.) Hopkins also asked an officer in the Sheriff's Peer Support Program to speak to Plaintiff and report back to Hopkins on Plaintiff's fitness for duty, a request which the officer refused because the Peer Support Program is confidential. (Defs.' LR 56 Stmt., Dkt. # 41-4, at Ex. 16.) On one occasion, Plaintiff was left to work in the lockup by himself when the other deputy there with him had to leave the lockup temporarily. (Pl.'s LR 56 Stmt., Dkt. # 50 at ¶ 18.)

The deputy ordered to leave Plaintiff alone in the lockup gave a statement opining that having only one officer to manage the detainees created a "dangerous situation for the lockup." (*Id.*; Defs.' LR 56 Stmt., Dkt. # 41-4, at Ex. 16.) Another deputy witnessed Lieutenant Hopkins calling Plaintiff "scatterbrain." (Pl.'s LR 56 Stmt., Dkt. # 50 at ¶ 22; Defs.' LR 56 Stmt., Dkt. # 41-4, at Ex. 16.) Hopkins also referred to Plaintiff's uncle, a former Sheriff, as a "jagoff" a few times. (Pl.'s LR 56 Stmt., Dkt. # 50-1 at p. 59.)

Based on the above events, Plaintiff now asserts three causes of action: (1) failure to accommodate under the Americans with Disabilities Act, (2) "ADA – Hostile Environment – Retaliation," and (3) "ADA – Retaliation & Harassment." (First Am. Compl., Dkt. # 19.) Defendants have moved for summary judgment as to all of Plaintiff's claims. (Mot. Summ. J., Dkt. # 39.)

## Summary Judgment Standard

A district court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether a genuine dispute exists as to any material fact, a court must view all the evidence and draw all reasonable inferences in favor of the non-moving party. *See Weber v. Univ. Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). It is not appropriate for the court to judge the credibility of the witnesses or evaluate the weight of the evidence; the only question on summary judgment is "whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009). Summary judgment is appropriate only if the record, taken as a whole,

establishes that no reasonable jury could find for the non-moving party. *See Sarver v. Experian Info. Solutions*, 390 F.3d 969, 970 (7th Cir. 2004).

**Discussion**

All three of Plaintiff's causes of action are based on the Americans with Disabilities Act ("ADA"). The ADA forbids discrimination against a disabled individual "because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). As a threshold matter, an individual seeking to assert claims under the ADA must show that he or she is disabled, and that he or she is a "qualified person" for the job position in question. *See Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 571-72 (7th Cir. 2001). Disability under the ADA is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). A qualified person is one who "satisfies the pre-requisites for the position" and "can perform the essential functions of the position held or desired, with or without reasonable accommodation." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996) (quoting 29 C.F.R. app. § 1630.2(m)). As Plaintiff has worked as a Deputy Sheriff II for over a decade and continues to hold that job title, he is clearly a qualified person capable of performing the duties of that position. Defendants argue that Plaintiff's ADA claims fail at the outset because he has failed to prove (or even plead) a disability cognizable under the ADA. (Mot. Summ. J., Dkt. # 39 at 6) ("No limitation of a major life activity is pled in the complaint,

nor is there any evidence in this case that [Plaintiff's] herniated disc or lumbar pain limits any major life activity").

It is not necessary to reach the question of whether Plaintiff's injury *actually* limited a major life activity, however, because Plaintiff clearly satisfies the "regarded as" prong of the disability definition. Under this prong, even an employee who is not actually disabled can state a claim under the ADA if his or her employer mistakenly believed that a disability existed. *See Steffen v. Donahoe*, 680 F.3d 738, 745 (7th Cir. 2012) ("To succeed under the 'regarded as' prong, a plaintiff must establish an accepted major life activity under the ADA and prove that his employer believed him to be substantially limited in that major life activity"). The fact that Defendants granted Plaintiff disability leave with full pay adequately demonstrates that they believed his back injury substantially limited his ability to work, and working is a major life activity. *See* 29 C.F.R. § 1630.2(i) (2007) (interpreting major life activities as including "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working"). Whether or not Plaintiff was sufficiently recovered from his injury to no longer qualify as disabled in July 2013 is disputed, but Plaintiff clears the initial bar of showing that Defendants at some point considered his back injury to substantially limit his ability to work.

The Court now addresses whether the record reflects material facts such that a reasonable jury could find for Plaintiff on any of his three ADA claims.

*Count I: Failure to accommodate*

Plaintiff's amended complaint lists the following specific failures to accommodate: " a) Putting [Plaintiff] in situations where he could be harmed because of his disability by intentionally understaffing at his facility; b) Being denied accommodations in conformance with

[Plaintiff's] medical restrictions; c) Being denied accommodations by requiring [Plaintiff] return to work while not medical[ly] able." (First Am. Compl., Dkt. # 19 ¶ 11.) While somewhat unclear, the Court interprets these statements to allege three specific accommodations that Plaintiff believes Defendants should have made after his back injury: increased staffing in the lockup, returning Plaintiff to light duty instead of full duty, and not ordering Plaintiff to return to work in July 2013 against the advice of Plaintiff's doctor.

The ADA defines discrimination in part as "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual." 42 U.S.C. § 12112(b)(5)(A). To establish a failure-to-accommodate claim, a plaintiff must prove that: (1) the plaintiff is an otherwise qualified individual with a disability; (2) the employer was aware of the plaintiff's disability; and (3) the employer failed to reasonably accommodate the disability. *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005). It is "the employer's prerogative to choose a reasonable accommodation; an employer is not required to provide the particular accommodation that an employee requests." *Jay v. Intermet Wagner, Inc.*, 233 F.3d 1014, 1017 (7th Cir. 2000).

The requirement that an employee be "otherwise qualified" rather than merely "qualified" is significant. *See Brumfield v. City of Chi.*, 735 F.3d 619, 631-32 (7th Cir. 2013) (noting that "only individuals who possess 'physical or mental limitations' but are '*otherwise* qualified' for the job are eligible for reasonable accommodations") (emphasis in original). In *Brumfield*, the Seventh Circuit recognized that it had "not specifically addressed the term 'otherwise qualified individual' as it appears in the reasonable-accommodation provision" of the ADA, and went on to hold that the term means an employee is only entitled to accommodation where his or her disability actually prevents him or her from performing the relevant job without

accommodations. *See* 735 F.3d at 633 (holding that "to satisfy the first element of a failure-to-accommodate claim, the plaintiff must show that she met the employer's legitimate selection criteria and needed an accommodation to perform the essential functions of the job at issue"); *id*. at 631-32 ("The *Sears* formulation should not be understood to enable a plaintiff to state a failure-to-accommodate claim against her employer even though she was able to perform all essential functions of her job without regard to her physical or mental limitations").

Applying the limitation established in *Brumfield*, no reasonable jury could find based on the factual record that Plaintiff was entitled to any of the accommodations he requested. Plaintiff does not complain that his back injury prevented him from fulfilling the duties of a Deputy Sheriff II. Rather, he alleges only that his back injury made him more concerned about possible re-injury if he were again attacked by detainees. Plaintiff gave the following testimony in his deposition:

> Q. Alright. And are there any – During the periods of time we've been talking about both in 2013 and then again this year in 2014, when you've been at work, have you been able to perform all of these duties?
> A. I -- I -- I have, but very guardedly.
> Q. Okay. And when you say very guardedly, what do you mean by that?
> A. Our staffing has been so depleted on our shift, we had -- or the male staff on our shift has been cut 70 percent. On the midnight shift we have a 24 hour lockup so we have no backup in the building, so I have to be very careful because the injury that I've already sustained at work, you know, and it's a very hostile, unsafe work environment.

(Pl.'s LR 56 Stmt., Dkt. # 50-1 at Ex. 1, p. 32 ll. 9-24.) Similarly, Plaintiff's statement of undisputed facts makes the following admission: "Because of [Plaintiff's] disability of a herniated disk and degenerative eye condition [Plaintiff] is able to perform his duties however he does so guardedly as there is little back-up for him on the midnight shift leaving him in an unsafe environment." (*Id*. at ¶ 14.) Plaintiff has failed to offer any countervailing evidence that his back injury or his eye problems meaningfully impaired his ability to perform the duties of a Deputy

Sheriff II, and for that reason no reasonable jury could find for Plaintiff on Count I. Having consistently admitted that he is able to perform his duties without accommodation, Plaintiff's failure-to-accommodate claim fails as a matter of law.[1]

*Count II: "ADA – Hostile Environment – Retaliation"*

Plaintiff's second cause of action states that Plaintiff "has engaged in the protected activity of requesting accommodations for his disability under the ADA" and that Plaintiff has been harmed by Defendants "making it very difficult for him to work at the Sheriff's Department" in the following ways:

> d) Putting [Plaintiff] in situations where he could be harmed because of his disability by intentionally understaffing at his facility.
> e) Being denied accommodations in conformance with [Plaintiff's] medical restrictions.
> f) Being denied accommodations by requiring [Plaintiff] return to work while not medical[ly] able.
> g) Putting [Plaintiff's] safety at risk by placing him on full duty and not allowing him to carry Sheriff's credentials nor a weapon when returning to active duty on July 8, 2013.

(First Am. Compl., Dkt. # 19 ¶¶ 20-21.)

Employers are prohibited from retaliating against employees who assert their rights under the ADA. 42 U.S.C. § 12203(a). Retaliation against employees who raise ADA claims is actionable even if the employee's initial claims of discrimination were meritless. *See Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 786 (7th Cir. 2007). An employee can establish a claim of retaliation using one of two methods of proof. Under the "direct method," the employee must show that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse action; and (3) a causal connection existed between the two. *See Casna v. City of Loves Park*, 574 F.3d 420, 426 (7th Cir. 2009). Alternatively, a plaintiff may choose to shift the burden to the

---

[1] Because Plaintiff's admitted ability to work normally in spite of his injury is dispositive, the Court does not address the numerous other infirmities Defendants raise as to Plaintiff's failure-to-accommodate claim.

defendant via the "indirect method" by showing that he: (1) engaged in protected activity; (2) was performing his job satisfactorily; and (3) was singled out for an adverse employment action that similarly situated employees who did not engage in protected activity did not suffer. *Dickerson v. Bd. of Trustees of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601-02 (7th Cir. 2011). Once the plaintiff has established these elements, the burden then shifts to the defendant to present a non-retaliatory reason for the adverse employment action and the plaintiff must then attempt to show that the proffered reason is pretextual. *See Jasmantas v. Subaru–Isuzu Auto., Inc.*, 139 F.3d 1155, 1157 (7th Cir. 1998).

The second and third of Defendants' allegedly retaliatory acts are easily disposed of, as the adverse action underlying them is simply a denial of Plaintiff's request for accommodations. These allegations are circular; because the protected activity Plaintiff alleges he engaged in *was* requesting accommodations, the denial of such requests can hardly be considered unlawful retaliation for the act of requesting them. *See Pagliaroni v. Daimler Chrysler Corp.*, No. 04-C-1213, 2006 WL 2668157, at *9 (E.D. Wis. Sept. 15, 2006) (granting summary judgment on retaliation claim premised on failure to grant accommodations, because if such claims were allowed "almost every failure to accommodate claim would be simultaneously a retaliation claim" and "it was unlikely Congress' intent to provide plaintiffs redundant relief for the same conduct"). Moreover, as noted above, Plaintiff was not entitled to any accommodation because his back injury did not prevent him from carrying out his duties. The Court therefore considers only whether a reasonable jury could find that Defendants retaliated against Plaintiff by understaffing the lockup and by returning Plaintiff to duty without his credentials or a weapon.

As an initial matter, the Court notes that Plaintiff relies wholly on his allegations and his testimony from his own deposition in support of his claims. With the exception of two statements

11

citing to portions of Defendants' exhibits, every one of Plaintiff's statements of fact cites solely to Plaintiff's deposition testimony. While Plaintiff's own sworn testimony may suffice to create a triable issue of fact as to matters within his personal knowledge, summary judgment is the "'put up or shut up' moment in a lawsuit" and Plaintiff bears the burden of coming forward with admissible evidence in support of his claims. *Siegel v. Shell Oil Co*., 612 F.3d 932, 937 (7th Cir. 2010) (quoting *Johnson v. Cambridge Indus., Inc*., 325 F.3d 892, 901 (7th Cir. 2003)).

With regard to the alleged understaffing, Plaintiff has failed to offer sufficient evidence to support an inference of retaliation under either method. Plaintiff has not pointed to any evidence that staffing levels changed after his accommodation requests in July 2013, and in fact the only evidence on the topic is Plaintiff's own testimony suggesting that staffing reductions were an ongoing process that began prior to Plaintiff's interactions with the Personnel Department. (*See* Pl.'s LR 56 Stmt., Dkt. # 50-1 at Ex. 1, p. 37 ll. 17-20) ("I'm asking for having overall a safe work environment, is after I started making staffing complaints and they *continued* to cut staffing from our shift") (emphasis added); (*id*. at Ex. 1, p. 57 ll. 2-11) (relating that Plaintiff's father complained to Defendants about understaffing at the lockup shortly after Plaintiff's initial injury and prior to Plaintiff's accommodation requests.) While Plaintiff testifies that staffing has "been cut over 80%" on his midnight shift, he has failed to provide any evidence supporting this percentage, indicating when staffing cuts took place, or clarifying what that alleged 80% reduction is in relation to. (*Id*. at Ex. 1, p. 40 ll. 8-10.)

The only evidence of a retaliatory motive in the record – either direct or circumstantial – is a portion of Plaintiff's deposition testimony in which he relates that another deputy told him the Chief was decreasing staffing to punish Plaintiff. (*Id*. at Ex. 1, pp. 64-65.) This testimony is, however, inadmissible hearsay, and is thus not properly a basis for defeating a motion for

summary judgment. *See Morrow v. Wal–Mart Stores, Inc.*, 152 F.3d 559, 563 (7th Cir. 1998) (noting that "hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial") (quoting *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997)). Plaintiff has offered no admissible evidence from which a jury could infer any connection between Plaintiff's accommodation requests and the shortage of personnel at the lockup.

Plaintiff's allegations that he was sent back to work without credentials or a weapon also fail, because Plaintiff has failed to show that either of these qualified as an adverse employment action for purposes of an ADA retaliation claim. An adverse employment action is one that puts the employee in "a more unfriendly working environment: actions like moving the person from a spacious, brightly lit office to a dingy closet, depriving the person of previously available support services (like secretarial help or a desktop computer), or cutting off challenging assignments." *Knox v. Indiana*, 93 F.3d 1327, 1334 (7th Cir. 1996). It is undisputed that deputies are forbidden by written policy from having weapons in the lockup. (Defs.' LR 56 Stmt., Dkt. # 41 at ¶ 39.) As Plaintiff was assigned exclusively to the lockup, the delay in issuing him a service weapon can hardly have affected his employment in any meaningful way. While the record does reflect that Plaintiff's credentials were not returned to him until roughly one month after he returned to work, Plaintiff nonetheless returned to work immediately at full pay and performed all his ordinary duties. Plaintiff points to no evidence supporting his claim that his temporary lack of "credentials" (presumably his badge, though the record is unclear) caused Plaintiff's work environment in the lockup to be more objectionable than otherwise. Therefore, there are no facts in the record from which a jury could conclude that the temporary lack of credentials constituted an adverse employment action, and summary judgment is appropriate.

While the Court reads Count II as pleading a cause of action for retaliation, the complaint also includes the term "hostile environment." It is therefore necessary to consider whether Plaintiff has created a triable issue of fact if the count is read as a hostile work environment claim rather than a retaliation claim. The Seventh Circuit has not explicitly permitted hostile work environment claims under the ADA. *See Latham v. Donahue*, 2014 WL 1876145, at *4 (N.D. Ill. 2014) (noting that "[t]he Seventh Circuit has not expressly decided whether a hostile work environment claim exists under the Rehabilitation Act or the ADA"). It has suggested, however, that if such a claim is presumed cognizable a plaintiff "must follow the methodology already established in the parallel area of Title VII litigation." *Silk v. City of Chi.*, 194 F.3d 788, 804 (7th Cir. 1999). A hostile work environment claim therefore requires four elements: "(1) the plaintiff must be the object of unwelcome harassment; (2) the harassment must be based on disability; (3) it must be sufficiently severe and pervasive so as to alter the conditions of employment; and (4) there must be a basis for employer liability." *Bellino v. Peters*, 530 F.3d 543, 551 (7th Cir. 2008).

As noted above, the understaffing issue fails to satisfy the requirement of a connection between the "harassment" and Plaintiff's disability. Plaintiff has also failed to offer any evidence establishing that a brief delay in issuing his weapon and credentials was harassment based on disability, because as stated above these delays did not meaningfully alter the conditions of Plaintiff's employment at the lockup. To the extent that Plaintiff intends to base a hostile work environment claim on taunts by his superiors, he has failed to establish such a claim as well. The only admissible evidence[2] of the "harassment" Plaintiff complains of is a few occasions in which other officers called Plaintiff a "scatterbrain" or made disparaging remarks about Plaintiff's

---

[2] Plaintiff's deposition also reports various bits of secondhand office gossip regarding negative things others said about him outside his presence. As noted above, hearsay is inadmissible for summary judgment purposes and cannot meet Plaintiff's burden of producing evidence to support his claims.

uncle, a former Sheriff. As Plaintiff's claimed disability is purely physical rather than mental, there is no reason to infer that colleagues calling Plaintiff a "scatterbrain" was based on his disability. Negative opinions about Plaintiff's family members appear similarly unconnected to his back injury or eyesight problems.

Accordingly, Defendants are entitled to summary judgment on Count II whether it is read as a retaliation claim or a hostile work environment claim.

*Count III: "ADA – Retaliation & Harassment"*

As the title of this claim suggests, Count III is largely duplicative of Count II. Two of the three alleged acts of retaliation/harassment specified in this claim appear to be the same as acts alleged in Count II, specifically "Putting [Plaintiff] in situations where he could be harmed because of his disability" and "Being denied accommodations to [Plaintiff's] medical restrictions." (First Am. Compl., Dkt. # 19 ¶ 28.) These allegations are identical to Plaintiff's allegations in Count II regarding understaffing and failure to accommodate, and they therefore fail for the reasons discussed above. Count III also includes a new allegation, however: that Defendants have made it difficult for Plaintiff to work by:

> A. Reprimanding [Plaintiff] of unauthorized absences while not having work for him due to the requirement of accommodations and doing so 120 [sic] after an alleged violation, while the Sheriff's policy called for any reprimand to be done within 72 hours of a violation. This being done after [Plaintiff] had received his "right to sue" from the EEOC.

(*Id.*)

While not entirely clear, Count III appears to allege retaliation in that Plaintiff received reprimands for unexcused absences in violation of a Sheriff policy regarding the timeliness of such reprimands. Reprimands without morClearlye generally do not qualify as an adverse employment action. *See Chaib v. Indiana*, 744 F.3d 974, 987 (7th Cir. 2014) (affirming grant of

15

summary judgment against correctional officer, because officer had "not carried her burden to show that a reasonable jury could find that the reprimand was materially adverse"); *Grube v. Lau Indus., Inc.,* 257 F.3d 723, 729–30 (7th Cir. 2001) ("Unfair reprimands or negative performance evaluations, unaccompanied by some tangible job consequence, do not constitute adverse employment actions").

Plaintiff admits that the reprimands did not affect his pay and remained in his personnel file for only one year. (Pl.'s LR 56 Stmt., Dkt. # 50-1 at Ex. 1, p. 28.) He also testified, however, that under Defendants' written policy such reprimands prevented him from bidding on openings for other assignments. (*Id.* at Ex. 1 p. 25 ll. 9-14.) Defendants have produced an affidavit from Markham's Facilities Chief stating that reprimands for unauthorized absence do not prohibit a deputy from bidding on other assignments. (*See* Defs.' LR 56 Stmt., Dkt. # 41-5, at ¶ 13) (stating that "the fact that an officer has been reprimanded for any reason does not bar him from bidding under either the Collective Bargaining Agreement or any of the Sheriff's Department Orders.") Plaintiff has offered no evidence that such a policy existed besides his own speculation, and his self-serving deposition statements that are not supported by the record are insufficient to create a triable question of fact on this issue.[3] Moreover, even if the reprimands did carry some materially adverse consequences, Plaintiff has failed to offer any evidence that they were undeserved, that they were motivated by his protected activity of filing an EEOC complaint, or that any time limit for issuing reprimands actually exists.

Accordingly, a reasonable jury could not find for Plaintiff on his retaliation claim regarding reprimands for unexcused absences, and summary judgment is appropriate in favor of Defendants.

---

[3] Notably, Plaintiff's attorney promised at the deposition to produce the documents that Plaintiff claimed would show a policy regarding reprimands and bidding for assignments. (Pl.'s LR 56 Stmt., Dkt. # 50-1 at Ex. 1, p. 30.) Plaintiff's counsel does not appear to have followed through on that promise.

**Conclusion**

For the reasons set forth above, Defendants' motion for summary judgment [39] is granted as to all claims. Civil case terminated.

**Date**: April 23, 2015

_____

**Ronald A. Guzmán**
**United States District Judge**